[Crim. No. 14630.   Second Dist., Div. Four.   Jan. 21, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. MORRIS EARL STEPHENSON, Defendant and Appellant.

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Elizabeth Miller and Robert F. Katz, Deputy Attorneys General, for Plaintiff and Respondent.

KINGSLEY. J.—Defendant was charged with a violation of section 11531 of the Health and Safety Code (transporting marijuana). Defendant was also charged with prior convictions for violations of section 11500 of the Health and Safety Code, section 211 of the Penal Code and section 11530.5 of the Health and Safety Code. A public defender was appointed. Defendant denied the prior convictions and pled not guilty.

Defendant, personally, and all counsel waived jury trial. The cause was submitted on the testimony in the preliminary hearing. Defendant was found guilty, a motion for new trial was denied, and the offense was reduced to a violation of section 11530 of the Health and Safety Code, a lesser and included offense.

At about 9 p.m., on July 13, 1967, David R. Daniel, a Los Angeles police officer, received from the analytical officer of the 77th Division a sheet containing descriptions of eight or nine vehicles used in specific crimes in that division during the past week. A '55 or '56 green and white Buick, with a general description of one male Negro, was listed in connection with a robbery.

Officer Daniel observed a '55 or '56 green and white Buick, license PYY 263 on Imperial Highway at about 10:30 or 10:45 p.m., in the evening of July 13. The Buick went to a drive-in and the passenger got out. He went to the service area and returned later with nothing in his hand. The vehicle left and then the officer stopped the car. Two Negroes were in the car. Defendant, the driver, had no license or identification, and he said the car belonged to his wife. Officer Daniel asked if the vehicle registration was in the car, and defendant said

"yes." The registration appeared to be on the steering column but the officer could not read it because it was turned downward. Officer Daniel opened the door, bent down to retrieve the registration and noticed a three-inch folded newspaper or bindle on the driver's side. The officer had never seen papers wrapped in that manner for any purpose other than to contain marijuana. The officer shone his flashlight on the bindle and saw small green leafy particles appearing to be marijuana. Defendant was then placed under arrest for possession of marijuana. A forensic chemist testified that the bindle contained marijuana.

## I

Defendant's first assertion is that there was no probable cause to temporarily detain the occupants of the car for questioning. To support his argument defendant cites cases in which the police had more cause to stop than existed in the case before us. (See *People* v. *Mickelson* (1963) 59 Cal.2d 448 [30 Cal.Rptr. 18, 380 P.2d 658] ; *People* v. *Dumas* (1967) 251 Cal.App.2d 613 [59 Cal.Rptr. 541] ; *People* v. *Bird* (1967) 248 Cal.App.2d 307 [56 Cal.Rptr. 501].) However, these cases are of limited assistance in deciding the issue before this court because none of these cases actually hold that evidence similar to the evidence in the instant case would have been insufficient. They simply hold that the evidence before those particular courts were sufficient to stop and question.

Defendant also argues that there were no additional suspicious circumstances in the case at bench, to warrant stopping the defendant's car. Defendant argues (and the People disagree) that going to a drive-in window and returning without food is not a "suspicious circumstance." We must agree with defendant in this regard since there are many plausible reasons why defendant could have gone to a drive-in service window and returned without food. Therefore, the issue before this court is whether or not the description of the car and the general description of the occupants in the police records was sufficient cause to detain defendant for questioning.

The accepted guideline for temporary stopping for questioning is whether a reasonable man in the same circumstance would believe such conduct necessary to a proper discharge of duties. (*People* v. *Perez* (1966) 243 Cal.App.2d 528, 531 [52 Cal.Rptr. 514].) The strength of the information an officer should have to engage in questioning is neces-

sarily much less than it would be for an arrest. (*People* v. *Currier* (1965) 232 Cal.App.2d 103, 106 [42 Cal.Rptr. 562].)

■ The Supreme Court "stop and frisk" cases, as summarized in *Terry* v. *Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868], have not abolished the California rule permitting a temporary detention for questioning where the officer can point to reasons, beyond a mere hunch, for questioning the suspects.

■ Several cases have held that less cause than existed in the case at bench was sufficient to stop for temporary detention and questioning. The case of *People* v. *McGlory* (1964) 226 Cal.App.2d 762, 764-765 [38 Cal.Rptr. 373], held that there was sufficient cause to investigate where defendant and two others were sitting in a parked car in the early morning hours in a high frequency narcotic area, and defendant raised his hand over his head as two plainclothes officers drove by.

The case of *People* v. *Davis* (1963) 222 Cal.App.2d 75 [34 Cal.Rptr. 796], is directly in point. In that case the officers were looking for a 1950-1953 Plymouth used by three male Negroes in a purse-snatching incident a week or two before. About ten blocks away from where the incident occurred, two weeks later, an officer saw four male Negroes in a blue and white Plymouth. The court held that there was sufficient cause to stop the automobile in view of the fact that the car was a 1951 Plymouth with four male Negroes in it. In the case at bench there was even more reason to stop the car than in the *Davis* case since the description of the car, both as to year and color, was more precise.

## II

■ Defendant argues that validity of the information on the occurrence sheet was not proved, and therefore defendant's conviction cannot stand.

However, the cases on which defendant here relies are not in point. Whatever may be the rules when a police officer in the field relies on information coming through official channels as justification for an arrest, it is, as we have pointed out, proper to detain for the purpose of investigation on the basis of information much less than that rising to the dignity of "probable cause," and the "tip" which triggers investigative action, unlike that which creates grounds for arrest, need not come from a source of proven reliability. Clearly, data coming through official police sources meets this requirement,

whether or not it would justify an arrest. In the case at bench, the arrest was not based on the police data, which had spent itself when it occasioned the stopping of the vehicle. All that followed thereafter was based on the officer's own observations made in the course of a lawful check on the identity of the driver and the registration of his vehicle.

### III

■ Defendant's last assertion is that the law permitting temporary detentions in cases where there is less than probable cause for arrest is unconstitutional. Where, as here, the detention is for a specific purpose in connection with a specific crime, the validity has been sustained. (*Terry* v. *Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868].)

The judgment (order granting probation) is affirmed.

Files, P. J., and Dunn, J., concurred.