[No. B024855. Second Dist., Div. Two. Mar. 9, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
OSCAR CARVAJAL et al., Defendants and Appellants.

[Opinion certified for partial publication.*]

---

*Pursuant to Supreme Court order dated June 23, 1988, part I of this opinion is directed to be published. Parts II and III are not certified for publication.

**COUNSEL**

Hanson & Egers, Earl L. Hanson, Roger J. Rosen, David M. Dudley, Nasatir & Hirsch, Michael D. Nasatir, Michaelson & Levine, Alvin S. Michaelson and Janet I. Levine for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Susanne C. Wylie and Tricia Ann Bigelow, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**FUKUTO, J.—**

*Introduction*

Appellants, Oscar Carvajal, Wilson Montoya, Jose Martinez, Smila Franks, and Ligia DeVinciquerra, appeal from the judgments entered upon

their negotiated pleas of guilty and nolo contendere to various narcotic drug charges and enhancements following denial of their motions to quash and suppress. (Pen. Code, § 1538.5, subd. (m).) On appeal, all appellants challenge the trial court's orders denying their motions to quash search warrants and suppress evidence. Appellants Montoya and Martinez also contend that their sentence exceeded the double-the-base-term limitation of Penal Code section 1170.1, subdivision (g). We affirm the judgments.

## I.

### *Detention and Search of the Mitsubishi Truck*

Appellants Montoya and Martinez each attack the legality of the detention and search of a Mitsubishi truck and its contents, including sealed boxes in the rear of the truck containing in excess of 400 pounds of cocaine. Viewed according to the customary standard of appellate review (*People* v. *Leyba* (1981) 29 Cal.3d 591, 596-597 [174 Cal.Rptr. 867, 692 P.2d. 691]), the evidence at the Penal Code section 1538.5 hearing established that within 10 days prior to April 23, 1986, Los Angeles Police Detective Gary Bitterolf received information from a confidential, reliable informant identifying Montoya and Oscar Carvajal as major Colombian drug traffickers. On April 23, 1986, Detective Bitterolf and several other police officers began surveillance of premises at 1729 G Street in the City of Ontario. At approximately 7 a.m., they saw Montoya leave the residence, driving a blue Toyota pickup truck with a three-tone blue shell camper. The officers followed.

Montoya stopped at a pay telephone. He dialed a telephone number, then hung up and briefly returned to his truck. The telephone rang and Montoya answered and appeared to carry on a brief conversation. Based on Montoya's conduct, Detective Bitterolf formed the opinion that a beeper or pager device had been utilized.

Montoya returned to his truck and drove to a residence at 19211 Chestridge Drive in the City of Walnut. Montoya entered the house for approximately three minutes, then drove back to 1729 G Street and used a key to enter condominium number 85. He was carrying a small envelope or package.

Later, Montoya left the residence accompanied by Juan Carvajal (hereinafter Juan C.). Montoya entered the Toyota truck and Juan C. entered a dark brown Celebrity station wagon. The two cars travelled in tandem to a camper shell vendor in the San Fernando Valley. Montoya left the truck there and entered the station wagon driven by Juan C. The station wagon made stops at two pay telephones where Montoya again appeared to

converse with persons contacted by pager or beeper. Montoya and Juan C. then picked up the Toyota truck, which had a new, smaller white camper shell.

Montoya and Juan C. each drove their vehicles to the corner of Fifth Street and Wilshire Boulevard in the City of Santa Monica. Montoya parked in a restaurant parking lot and used a pay telephone in a manner consistent with the use of a beeper or pager. Thereafter, he waved to Juan C., who retrieved a package about the size of a "kilo" or "brick" from inside the station wagon. Detective Bitterolf formed the opinion that the package contained cocaine or money. The two men entered the Toyota truck and drove to the corner of Ocean and Wilshire Boulevards. There they were joined by appellants Oscar Carvajal (hereinafter Oscar C.) and Jose Martinez. The four men disappeared into the Cafe Casino restaurant for approximately 40 minutes.

Juan C. and Montoya emerged from the restaurant and returned to the Toyota truck. Martinez and Oscar C. drove away in a gray Honda, which entered the subterranean garage of the condominium complex at 1133 Fifth Street, and parked next to a Mitsubishi truck equipped with a camper shell identical to the one on Montoya's Toyota pickup truck. Juan C. and Montoya drove to the corner of Fifth Street and Wilshire Boulevard, parked, then entered the front security lobby door of the condominium complex. Juan C. was carrying an attache case.

Approximately one hour later, Juan C. and Oscar C. left the subterranean garage in the gray Honda. Contemporaneously, Montoya returned to his Toyota truck and Martinez drove the Mitsubishi truck from the subterranean garage. The two trucks travelled in tandem to 2702 Calle Ruiz Street in West Covina. Both entered a double garage. Martinez and Montoya subsequently left in the Mitsubishi truck and drove to a storage complex at 1200 Benson Street in the City of Upland. The trucks were driven in an unusual manner, in and out of several shopping center parking lots and appeared to be trying to detect or avoid surveillance. At the storage facility, Martinez and Montoya loaded several large boxes into the Mitsubishi truck. The boxes appeared extremely heavy because it took both men to lift each box into the truck. Detective Bitterolf was personally aware of three cases in which public storage facilities had been used for the storage of cocaine. The two men left the storage facility in the Mitsubishi truck.

Detective Bitterolf drove alongside the Mitsubishi truck and through the back door and side window of the camper shell, observed four large cardboard boxes wrapped with tape. Based upon his observations throughout the day, including the subjects' use of beepers and two identical trucks, their

unusual, evasive driving pattern, and the information received from the informant, Detective Bitterolf formed the opinion that the Mitsubishi truck contained a large quantity of cocaine. He believed that the truck was about to disappear into another garage where police officers could not see what was occurring, and decided to have the truck stopped and searched, whether or not the occupants consented.

Los Angeles County Deputy Sheriff Jerry Hankerson was on routine patrol in the City of Industry when he was approached by a Los Angeles police officer who requested that he stop the Mitsubishi truck. When the deputy activated his red lights, the truck pulled over and Montoya emerged from the driver's door and walked toward the patrol car. Deputy Hankerson patted down Montoya for weapons and asked him for a driver's license and vehicle registration. Montoya handed the deputy a new car brochure and gestured toward the truck. Deputy Hankerson concluded that Montoya did not speak English, and radioed for assistance.

Within two minutes, California Highway Patrol Officer James Padilla and Los Angeles Police Department Detective Donald Brown arrived at the scene. At Detective Brown's request, Officer Padilla asked Montoya, in Spanish, if there were any drugs in the pickup truck. Montoya replied that "he didn't know there was anything in there." Officer Padilla asked Montoya who owned the truck and Montoya stated that he had "borrowed the vehicle from a friend." Padilla then explained, in Spanish, that Detective Brown was a "drug officer" and "would like to look in the back of his pickup truck where the boxes were at." Montoya said, "Go ahead and look."

Detective Brown went to the rear of the camper shell and found it locked. He turned toward Officer Padilla and Montoya and asked for the keys. Padilla said, "Llaves," which is the Spanish word for keys. Montoya handed the keys to Detective Brown.[1]

The search of the boxes in the Mitsubishi truck yielded more than 400 pounds of cocaine.

It was later determined that the Mitsubishi truck was owned by appellant Martinez.

▮ Montoya joins Martinez in challenging the detention and search of the Mitsubishi truck. Respondent contends that Montoya lacks standing to

---

[1] While Detective Brown was questioning Montoya, Deputy Hankerson asked Martinez to alight from the truck, and conducted a pat-down search for weapons.

do so, the parties having stipulated that Martinez was the owner of the truck at the time in question.

The superior court found that Montoya had "standing to contest the search of the truck both as to the consent issue and as to the probable cause issue." ■ "On appeal, we review the matter of standing as a question of law, against the backdrop of facts as found by the trial court." (*People* v. *Leonard* (1987) 197 Cal.App.3d 235, 239 [242 Cal.Rptr. 757].)

■ Under *Rakas* v. *Illinois* (1978) 439 U.S. 128 [58 L.Ed.2d 387, 99 S.Ct. 421], the appropriate inquiry is whether the police intruded upon Montoya's reasonable expectation of privacy. (*Id.* at pp. 148-149 [58 L.Ed.2d at pp. 404-405].) The uncontroverted evidence establishes that Montoya was driving the vehicle with the owner's permission, and apparently possessed keys to the ignition and camper shell when detained by police. We find these facts sufficient to confer standing. (*People* v. *Leonard, supra,* 197 Cal.App.3d at p. 239; see also *People* v. *Nelson* (1985) 166 Cal.App.3d 1209, 1214 [212 Cal.Rptr. 799]; *United States* v. *Portillo* (9th Cir. 1980) 633 F.2d 1313, 1317.)

Appellants contend that the warrantless search of the camper shell was not supported by any exception to the warrant requirement. Respondent, on the other hand, asserts two legal theories to support the search: (1) that the search was made pursuant to consent obtained during a valid investigatory detention; and (2) that the search was a valid, warrantless search of an automobile based on probable cause. (*United States* v. *Ross* (1982) 456 U.S. 798 [72 L.Ed.2d 572, 102 S.Ct. 2157].)

■ In ruling on a motion to suppress evidence, " 'the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor the exercise of that power, and the trial court's findings on such matters, whether express or implied, must be upheld if they are supported by substantial evidence.' " (*People* v. *Leyba, supra,* 29 Cal.3d at pp. 596-597; citations omitted.) Of course, an appellate court must exercise its independent judgment as to whether, on the facts found, the search was constitutionally reasonable. (*People* v. *Leyba, supra,* 29 Cal.3d at p. 597.)

■ In denying the motion to suppress, the trial court found that there was "no doubt" probable cause existed to "effect a stop of the truck for further investigation, . . ." We agree. The evidence at the motion to suppress established that Detective Bitterolf had been a police officer for 23 years, and a narcotics division detective for 14 years. He had qualified

"hundreds of times in state courts" and "15 to 18 times in federal court" as an expert in the "manner in which narcotics specifically cocaine are held for purposes of sale and the manner in which they are smuggled and hidden." For the 14 years prior to the search, Bitterolf had conducted 20 to 40 investigations into large-scale narcotic smuggling rings, and had participated in the seizure of cocaine over 100 times. For several years prior to the search, Detective Bitterolf had participated in a number of investigations of Colombian drug traffickers which eventually resulted in the seizure of large quantities of cocaine from public storage lockers. In 50 major cases investigated in the past year, Bitterolf could not recall a single one in which a beeper or pager device was not recovered at the location where the narcotics were found.

At the time of the detention, Detective Bitterolf had received information from an informant of proven reliability that appellants Montoya and Oscar C. were major Colombian traffickers of cocaine.[2] While under surveillance on April 23, Montoya repeatedly stopped at public telephones and appeared to establish contact with persons through the use of a beeper or pager, stopped briefly at a number of residences, met with Oscar C., another suspected drug dealer, and drove his truck in a highly unusual, apparently evasive manner immediately following the retrieval of several large, heavy boxes from a storage facility. Although these activities might appear innocent to the uninitiated, Detective Bitterolf's special training and experience, together with the informant's tip, furnished a reasonable basis for his conclusion that criminal activity was afoot. (See *People* v. *Superior Court* (*McBride*) (1981) 122 Cal.App.3d 156, 164 [175 Cal.Rptr. 723]; see also *United States* v. *Fixen* (9th Cir. 1986) 780 F.2d 1434, 1438.)

■ The trial court further found that Montoya freely and voluntarily consented to the search of the truck, and that his consent was "intended to apply to the contents of the boxes as well as to the back of the truck. . . ." This finding, too, finds ample support in the record. The request to look in the back of the truck was not accompanied by a display of weapons, and no suggestion was made that Montoya would regret it if he refused to consent to a search. Montoya appeared to understand the question and, without hesitation, responded, "Go ahead and look." When Officer Padilla indicated that keys were necessary to open the camper shell by saying, "Llaves,"

---

[2] During Detective Bitterolf's testimony, the facts upon which his assessment of the informant's reliability was based were not developed. We note that the affidavit underlying the search warrant issued and executed on April 23, 1986, contains the following additional information: " 'Within the last ten days, your affiant has received i nformation from a confidential reliable informant, who has in the past nine months given information which has resulted in the seizure of large amounts of cocaine and the arrest and prosecution of several individuals. . . .' " The affidavit was not received in evidence at appellants' preliminary hearing, the record of which formed the evidentiary basis for the motion to suppress.

Montoya immediately retrieved the keys from his pocket and handed them to Officer Brown. Nothing more was required to establish the voluntariness of Montoya's consent. (*In re D.M.G.* (1981) 120 Cal.App.3d 218, 224 [174 Cal.Rptr. 557]; see also *People v. Nelson, supra,* 166 Cal.App.3d at p. 1214.) Furthermore, on these facts, it appears that the consent to search the camper shell was intended to authorize a search of all containers found within. (*People v. Williams* (1980) 114 Cal.App.3d 67, 73 [170 Cal.Rptr. 433].)

Montoya contends that his consent was vitiated because he was not given the advice required by *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602], prior to questioning. Contrary to appellant's contention, "advice as to *Miranda* rights is not a prerequisite to a voluntary consent to search." (*People v. James* (1977) 19 Cal.3d 99, 114 [137 Cal.Rptr. 447, 561 P.2d 1135].)

Alternatively, it is asserted that Montoya's consent was the product of an unlawful custodial interrogation because questions intended to elicit incriminating responses were asked before permission to search was requested; Montoya was asked whether there were drugs present, and to whom the truck belonged. It was for the trial court to determine whether these questions constituted a custodial interrogation sufficient to require *Miranda* warnings, and this determination must be upheld if supported by substantial evidence. (*People v. James, supra,* 19 Cal.3d at p. 107.)

Detective Brown testified that Montoya and Martinez were arrested and taken into custody *after* the search of the boxes yielded cocaine. Whether or not the two men were actually free to leave[3] at the time questioning commenced, Montoya had not been physically restrained, handcuffed, or advised that his freedom was restricted. Substantial evidence supports the trial court's implied finding that there had not been a seizure invoking constitutional safeguards. Moreover, the fact that suspicion had focused on the boxes does not as a matter of law require *Miranda* warnings before questioning. (*People v. Epperson* (1986) 187 Cal.App.3d 115, 120 [232 Cal.Rptr. 16].)

As a final ground for denying the motion to suppress, the trial court found that there was probable cause to search the truck and its contents, without consent. The warrantless search of an automobile is not unreasonable if officers have probable cause to believe that the vehicle contains contraband. (*United States v. Ross, supra,* 456 U.S. at p. 807 [72 L.Ed.2d at pp. 562-583].) The probable cause determination "must be based on objective facts that could justify the issuance of a warrant by a magis-

---

[3] The deputy district attorney stipulated that Montoya was not free to leave.

trate and not merely on the subjective good faith of the police officers." (*Id.* at p. 808 [72 L.Ed.2d at p. 583].) "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." (*United States* v. *Ross, supra,* 456 U.S. at p. 825 [72 L.Ed.2d at p. 594].)

 The search of the boxes was thus constitutionally permissible if, at the time of the search, the officers were aware of objective facts sufficient to justify the issuance of a warrant to search the truck for contraband. Applying the totality-of-the-circumstances approach (see *People* v. *Rosales* (1987) 192 Cal.App.3d 759, 767-768 [237 Cal.Rptr. 558]; *United States* v. *Fixen, supra,* 780 F.2d at p. 1436), we find sufficient probable cause to justify the issuance of a warrant and, thus, the warrantless search.

Within 10 days prior to the search of the truck, Detective Bitterolf, a police detective with a proven expertise in the area of cocaine smuggling and sales, received information from a confidential, reliable informant identifying Montoya and Oscar C. as major Colombian traffickers. Through his own experience and training, Detective Bitterolf was aware of certain patterns of behavior common to major traffickers of cocaine in recent years. During surveillance on April 23, 1986, Montoya and his companions engaged in many of such behaviors, characteristic of the modus operandi of cocaine dealers. The observations of police on April 23, 1986, were sufficient to satisfy the objective of demonstrating that "the informant was not 'fabricating his report out of whole cloth.' [Citations.]" (*People* v. *Medina* (1985) 165 Cal.App.3d 11, 18 [211 Cal.Rptr. 216].) Had the facts been presented to a magistrate, he could have made "a practical, commonsense decision that, under all the circumstances, there was a fair probability that contraband would be found in [Montoya's truck]." (*People* v. *Ramirez* (1984) 162 Cal.App.3d 70, 74 [208 Cal.Rptr. 128]; see also *People* v. *Rosales, supra,* 192 Cal.App.3d at pp. 767-769.)

Appellants' claim that the reliability of the informant was not adequately established is unavailing. Even if we assume the informant had never proven himself reliable by providing accurate, drug-related information, the observations of specially trained narcotic drug detectives satisfactorily " 'reduced the chances of a reckless or prevaricating tale,' thus providing 'a substantial basis for crediting the hearsay [statement of the informant].' [Citation.]" (*Illinois* v. *Gates* (1983) 462 U.S. 213, 244-245 [76 L.Ed.2d 527, 103 S.Ct. 2317].) The trial court correctly concluded that probable cause supported the warrantless search of the truck and its contents. (*United States* v. *Fixen, supra,* 780 F.2d at pp. 1436-1438.)

Citing *United States* v. *Chadwick* (1977) 433 U.S. 1 [53 L.Ed.2d 538, 97 S.Ct. 2476] and *Arkansas* v. *Sanders* (1979) 442 U.S. 753 [61 L.Ed.2d 235,

99 S.Ct. 2586] as authority, appellants contend that even if probable cause supported the search of the truck, a warrant was required to search the sealed boxes in which the cocaine was found. Neither case is authority for the proposition stated. In *Chadwick,* police had probable cause to believe that contraband was contained in a 200-pound footlocker loaded on a train bound for Boston. Agents waited to seize the footlocker until it had been placed in the trunk of Chadwick's automobile, then opened it without a warrant. In *Sanders,* police received information that a suspect would arrive at the local airport on a specified flight, carrying a suitcase containing marijuana. Sanders arrived as expected and retrieved the described suitcase. Agents failed to seize the luggage until Sanders had travelled several blocks from the airport in a cab. In each case, the warrantless search of the containers was struck down because police lacked probable cause to search the vehicles from which they were seized. (See *United States* v. *Ross, supra,* 456 U.S. at pp. 810-814 [72 L.Ed.2d at pp. 584-587].)

Here, Montoya and Juan C. had been observed in possession of a smaller "brick" shaped package which Detective Bitterolf believed contained cocaine, well before the boxes were retrieved from the storage locker. Furthermore, appellants' conduct throughout the day was consistent with the modus operandi of cocaine dealers engaged in the sale and delivery of smaller quantities of cocaine to various locations. The facts known to the officers therefore justified a search of the entire car, not just the boxes retrieved from the storage locker. The warrantless search of the boxes was entirely consistent with the principles enunciated in *United States* v. *Ross, supra.*

II., III.*

. . . . . . . . . . . . . . . . . . . . . . .

IV.

*Pleas and Sentences*

Following denial of their motions to suppress evidence, appellants Martinez, Montoya, and Oscar C. entered negotiated pleas of nolo contendere to possession for sale of cocaine (Health & Saf. Code, § 11351) and admitted allegations pursuant to Health and Safety Code section 11370.4 that the amount of cocaine possessed exceeded 25 pounds by weight. Pursuant to the plea bargain, it was promised that these appellants would receive a sentence

---

*See footnote, *ante,* page 487.

not to exceed 10 years in state prison, including no more than 5 years as an enhancement under Health and Safety Code section 11370.4.

At the sentencing hearing, Oscar C. was sentenced to the upper term of five years for transportation and sale of cocaine, plus five years for the twenty-five-pound enhancement (Health & Saf. Code, § 11370.4, subd. (3)). Montoya and Martinez were each sentenced to the low term of three years for transportation and sale of cocaine, plus five years for the twenty-five-pound enhancement.[6]

In 1986, Penal Code section 1170.1, subdivision (g) provided: "The term of imprisonment shall not exceed twice the number of years imposed by the trial court as the base term pursuant to subdivision (b) of Section 1170 unless the defendant stands convicted of a 'violent felony' as defined in subdivision (c) of Section 667.5, or a consecutive sentence is being imposed pursuant to subdivision (c) of this section, or an enhancement is imposed pursuant to Section 12022, 12022.4, 12022.5, 12022.6, 12022.7, or 12022.9 or the defendant stands convicted of felony escape from an institution in which he is lawfully confined."[7] ▮▮▮ Noting that the Legislature, in 1986, had not yet specifically exempted from the double-the-base limitation of section 1170 enhancements imposed under Health and Safety Code section 11370.4, Martinez and Montoya contend that their sentences are unlawful because a total sentence of eight years is more than twice the three-year sentence selected by the trial court as the base term.

Health and Safety Code section 11370.4 was enacted by the Legislature as an urgency measure, effective October 1, 1985. (Assem. Bill No. 2320 (1985-1986 Reg. Sess.) ch. 1398, § 3.) As enacted, section 11370.4 provided: "(a) Any person convicted of a violation of Section 11351 or 11352 [of the Health and Safety Code] with respect to a substance containing heroin or cocaine shall receive an additional term as follows: [¶] (1) Where the substance exceeds three pounds by weight, the person shall receive an additional term of three years. [¶] (2) Where the substance exceeds 10 pounds by weight, the person shall receive an additional term of five years. [¶] (3) Where the substance exceeds 25 pounds by weight, the person shall receive an additional term of 10 years. [¶] (b) The additional terms provided in this section shall not be imposed unless the allegation that the weight of the

---

[6] Upon denial of their motions, appellants DeVinciquerra and Franks entered negotiated pleas of guilty to possession for sale of cocaine. (Health & Saf. Code, § 11351.) DeVinciquerra and Franks received two- and three-year state prison sentences, respectively, pursuant to a plea bargain.

[7] Section 1170.1, subdivision (g) has since been amended to expressly exclude from the double-the-base-term limitation, enhancements imposed under Health and Safety Code section 11370.4. (Assem. Bill No. 2504 (1987-1988 Reg. Sess.) ch. 939, § 1.)

substance containing heroin or cocaine exceeds the amounts provided in this section is charged in the accusatory pleading and admitted or found to be true by the trier of fact. [¶] (c) The additional terms provided in this section shall be in addition to any other punishment provided by law. [¶] (d) Notwithstanding any other provision of law, the court may strike the additional punishment for the enhancements provided in this section if it determines that there are circumstances in mitigation of the additional punishment and states on the record its reasons for striking the additional punishment."[8] ■■■ The express purpose of the law was "to punish more severely those persons who are in the regular business of trafficking in, or production of, narcotics and those persons who deal in large quantities of narcotics as opposed to individuals who have a less serious, occasional, or relatively minor role in this activity." (Assem. Bill No. 2320 (1985-1986 Reg. Sess.) ch. 1398, § 1.)

Martinez and Montoya pled nolo contendere to violation of Health and Safety Code section 11352, which provides allowable base terms of three, four, or five years in state prison. Were we to accept appellants' construction of the statute, a three-year enhancement could be imposed upon a person convicted of possessing only three pounds of cocaine regardless of the base term selected. Yet, a five-year enhancement could be imposed on a person possessing ten pounds or more of cocaine *only if the upper base term of five years were selected.* In the case of a person convicted of possessing 25 or more pounds of cocaine, the 10-year enhancement *could never be imposed* since the double-the-base-term limitation of Penal Code section 1170.1 would be violated even if the upper, 5-year term were imposed.

■■■ A cardinal rule of statutory interpretation requires that statutes "be construed in a reasonable and common sense manner consistent with their apparent purpose and the legislative intent underlying them—one practical, rather than technical, and one promoting a wise policy rather than mischief or absurdity." (*Herbert Hawkins Realtors, Inc.* v. *Milheiser* (1983) 140 Cal.App.3d 334, 338 [189 Cal.Rptr. 450].) Moreover, "a statute should not be given a construction that results in rendering one of its provisions nugatory." (*People* v. *Craft* (1986) 41 Cal.3d 554, 560 [224 Cal.Rptr. 626, 715 P.2d 585].) We decline appellants' invitation to interpret Health and Safety Code section 11370.4 and Penal Code section 1170.1, subdivision (g) in a manner which violates both of these rules.

■■■,■■■ In holding that enhancements under Health and Safety Code section 11370.4 are not limited by subdivision (g) of Penal Code section

---

[8] Health and Safety Code section 11370.4 was subsequently amended to add a 15-year enhancement in cases in which the substance possessed exceeds 100 pounds by weight.

1170.1, we are cognizant that "[o]rdinarily, any reasonable doubts as to the proper meaning of an ambiguous criminal statute should be resolved in favor of the defendant." (*People* v. *Norris* (1985) 40 Cal.3d 51, 56 [219 Cal.Rptr. 7, 706 P.2d 1141].) "However, this rule is not inflexible and courts decline to apply it where it leads to results that are contrary to legislative intent or that fail to prevent the harm that is identified in the statute or that override common sense and create palpable absurdities." (*People* v. *Davis* (1985) 166 Cal.App.3d 760, 766 [212 Cal.Rptr. 673].)

We hold that enhancements under Health and Safety Code section 11370.4 were not, in 1986, limited by the double-the-base-term rule of Penal Code section 1170.1, former subdivision (g), despite the Legislature's initial, inadvertent failure to include such enhancements among the enumerated exclusions. To hold otherwise would frustrate the Legislature's purpose to punish narcotic drug dealers in proportion to the quantity of drug possessed. (Cf. *People* v. *Jackson* (1985) 37 Cal.3d 826, 838-839 [210 Cal.Rptr. 623, 694 P.2d 736].)

The judgments are affirmed.

Roth, P. J., and Compton, J., concurred.

The petition of appellant Martinez for review by the Supreme Court was denied June 23, 1988.