Filed 1/29/15  P. v. Littleton CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B254510 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA124049) |
| v. | |
| STEVE DONNELL LITTLETON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, John Joseph Cheroske and Laura R. Walton, Judges.  Affirmed.

Linn Davis, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Shawn McGahey Webb, Supervising Deputy Attorney General, and Nathan Guttman, Deputy Attorney General, for Plaintiff and Respondent.

—————————————

Following the denial of his motion to suppress, appellant Steve Littleton pleaded no contest to one count of possession of a firearm by a felon (Pen. Code,[1] § 29800, subd. (a)(1)), and admitted three prior convictions within the meaning of section 667.5, subdivision (b). He was sentenced to two years in state prison. Littleton contends the trial court erred in denying his section 1538.5 motion to suppress evidence which he contends was seized pursuant to an illegal detention. We affirm.

## FACTUAL BACKGROUND

The following facts are shown by testimony at the suppression hearing.

On July 12, 2012, Detective Matthew Landreth was assigned to the gang enforcement team within the operation safe streets task force of the Los Angeles County Sheriff's Department (LASD). Detective Landreth asked a probation officer who was also assigned to the gang enforcement team to research the residence at 11635 Pope Avenue in Lynwood (Pope house) and find out if anyone residing there was on probation. Detective Landreth had previously been to the Pope house, and knew from LASD resources and from speaking with other officers who had investigated the residence that the Pope house was owned and operated by members of the Pope Avenue "Crips" street gang. The probation officer reported that a woman named Rayshaniece Richards had identified the Pope house as her residence. Richards was on probation and subject to search-and-seizure conditions, and had an outstanding "no-bail" arrest warrant for robbery issued on October 30, 2008.

On July 13, 2012, at 7:15 p.m., after confirming that Richards's probation and warrant status remained unchanged, Detective Landreth and other deputies proceeded to the Pope house. As he and his partner approached in their patrol car, Detective Landreth saw Littleton and another man standing in front of the open door of the Pope house's attached garage. Other people were also standing outside the home. The garage was about 30 feet from the sidewalk.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

The patrol car accelerated as the deputies approached, and Littleton and the other men on the property "started scattering." Detective Landreth saw Littleton "[throw] a long object into the garage area" and walk away. Detective Landreth detained Littleton and ascertained his name. Three other men who had been outside the Pope house on the sidewalk or street were also detained.

After detaining Littleton, Detective Landreth entered the open garage where he saw a sawed-off shotgun lying on a couch. Upon further inspection, Detective Landreth's partner saw that the weapon's serial number had been obliterated. Detective Landreth believed that the shotgun was the object he had seen Littleton discard as he approached. Both were the same length and color, and the shotgun was found in the area into which Littleton had tossed the long object. No one else was or had been inside the garage.

Detective Landreth left the garage and headed to the front door where he asked Rosevelt Carter, the owner of the Pope house, whether Richards resided there. Carter denied knowing who Richards was. A few seconds later Detective Landreth noticed a woman (Imane Wallace) walking back and forth in the rear of the house. Detective Landreth spoke with Wallace who said she knew Richards, and told the detective that Richards "stayed" at the Pope house "often."

Detective Landreth then searched the house. He entered one bedroom which Carter identified as the room Littleton "had been staying" in. The door to the room was open and contained no locking mechanism. Because Richards had an outstanding arrest warrant, Detective Landreth searched under the bed in that room to ensure that no one was hiding there. After shoving some bags, shoes and other items aside, he saw a revolver which, upon inspection also had had the serial number removed. In the bedroom Detective Landreth found mail addressed to Littleton at the Pope house address. He also found mail dated July 12, 2012, addressed to Richards at the Pope house, lying on a coffee table elsewhere in the house.

## DISCUSSION

Littleton contends his detention was unlawful and unsupported by any objective manifestation that he was involved in any criminal activity and that, therefore, all evidence derived as a result of the illegal detention should have been suppressed as "fruit of the poisonous tree."  (See *Wong Sun v. United States* (1963) 371 U.S. 471, 484–488 [83 S.Ct. 407, 9 L.Ed.2d 441].)  We disagree.

1.    *Standard of review*

"In ruling on a motion to suppress, the trial court must find the historical facts, select the rule of law, and apply it to the facts in order to determine whether the law as applied has been violated.  [Citation.]"  (*People v. Hoyos* (2007) 41 Cal.4th 872, 891.)  In a hearing on a section 1538.5 motion to suppress evidence, "the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court.  On appeal all presumptions favor the exercise of that power, and the trial court's findings on such matters, whether express or implied, must be upheld if they are supported by substantial evidence."  (*People v. Lawler* (1973) 9 Cal.3d 156, 160.)

2.    *The investigative detention was justified.*

"A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific, articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity."  (*People v. Souza* (1994) 9 Cal.4th 224, 231 (*Souza*).)  Although a person's presence in a high-crime area is not by itself enough to create a reasonable suspicion the person is involved in criminal activity, the "setting is a factor that can lend meaning to the person's behavior.  [Citations.]"  (*People v. Limon* (1993) 17 Cal.App.4th 524, 532.)  "The time of night is another pertinent factor in assessing the validity of a detention."  (*Souza*, at p. 241.)  A person's "evasive conduct" or "sudden flight" from police also tends to establish the existence of reasonable suspicion.  (*Id.* at p. 242.)  Furtive movements or gestures alone are insufficient to constitute reasonable suspicion that criminal activity is afoot.  (*People v. Superior Court* (*Kiefer*) (1970) 3

4

Cal.3d 807, 827–828, fn. 13.)  However, furtive gestures coupled with other factors may provide reasonable suspicion that activity out of the ordinary has taken place.  (*People v. Flores* (1972) 23 Cal.App.3d 23, 27–28.)  The concept of reasonable suspicion cannot be reduced to "'a neat set of legal rules.'  [Citation.]"  (*United States v. Sokolow* (1989) 490 U.S. 1, 7 [109 S.Ct. 1581, 104 L.Ed.2d 1].)  It "can arise from less reliable information than required for probable cause . . . ."  (*People v. Wells* (2006) 38 Cal.4th 1078, 1083.)  "The officer, of course, must be able to articulate something more than an 'inchoate and unparticularized suspicion or "hunch."'  [Citation.]"  (*Sokolow*, at p. 7.)

The detention at issue was predicated on Detective Landreth's reasonable, articulated suspicion.  The specific facts articulated by Detective Landreth were:  On the evening of July 13, after verifying Richards's probation status and the fact that a warrant for her arrest remained outstanding, Detective Landreth and other officers headed to the Pope house—a residence he knew from personal experience and LASD resources was owned and operated by members of the Pope Avenue Crips, a criminal street gang—to search for Richards.  As the patrol cars converged on the property, Detective Landreth saw Littleton immediately toss the "long object" he was holding through the open garage door just before he and others quickly scattered to avoid the deputies.

The experienced detective's decision to detain Littleton was based on specific, articulable facts about the object he observed and the timing of Littleton's rapid, furtive action immediately disposing of that object and dispersing just as officers converged on the scene, and was reasonable under the circumstances.  (See *People v. Superior Court (Vega)* (1969) 272 Cal.App.2d 383, 387–388 [driver's suspicious act of driving at night without headlights coupled with furtive movements made just as red lights on patrol car pulling in behind his car were activated generated probable cause to justify detention and arrest]; *Souza*, *supra*, 9 Cal.4th at pp. 235, 240–241 [finding reasonable suspicion to detain where suspect in unlit, high-crime area late at night fled when officer shined spotlight on him, and his companions also ducked to avoid spotlight].)

We reject Littleton's assertion that Detective Landreth lacked a reasonable suspicion to believe he was involved in any criminal activity because there could be an

5

innocent explanation for his acts; the long object thrown into the garage might, for example, have been a wrench. First, Detective Landreth testified that he recognized the sawed-off shotgun lying on top of the couch in the garage precisely because it was the same size and color as the object Littleton discarded, and because it was found in the same area into which Littleton had tossed the object after seeing the officers converge. The visual information gleaned by the detective of Littleton's furtive movements and his effort to distance himself as quickly as possible from the garage into which he had just tossed the object were sufficiently reliable to justify the detective's reasonable suspicion that criminal activity was afoot. This is particularly so in light of Detective Landreth's specialized knowledge as a seasoned member of the gang enforcement team and his knowledge that the Pope house was owned and operated by members of a criminal street gang, the routine activities of which include commission of gun-related or violent felonies.

Although Littleton posits there may have been an innocent explanation for his behavior, "[a] determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." (*United States v. Arvizu* (2002) 534 U.S. 266, 277 [122 S.Ct. 744, 151 L.Ed.2d 740]; see *Souza*, *supra*, 9 Cal.4th at pp. 233–235; *In re Tony C.* (1978) 21 Cal.3d 888, 894 (*Tony C.*) ["The possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct"].) Even if circumstances observed by the officer might have an innocent explanation, they may still give rise to a reasonable suspicion which entitles the officer to perform an investigative detention. (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 146; *People v. Glaser* (1995) 11 Cal.4th 354, 373; *Souza*, at p. 242.) The California Supreme Court has long recognized: "[E]xperienced police officers develop an ability to perceive the unusual and suspicious, and we recognize the right and duty of officers to make reasonable investigation of such activities." (*People v. Aldridge* (1984) 35 Cal.3d 473, 477.) Activities which in isolation may seem innocuous, in proper context, can indicate criminal activity to a specially trained, experienced officer. (*People v. Carvajal* (1988) 202 Cal.App.3d 487, 495–496.)

6

It is true that the factors cited by Detective Landreth might not by themselves suggest criminality. However, those factors must be examined in their entirety, not in isolation. A factor such as "evasive behavior is . . . pertinent . . . in determining reasonable suspicion." (*Illinois v. Wardlow* (2000) 528 U.S. 119, 124 [120 S.Ct. 673, 145 L.Ed.2d 570].) So is the fact that the defendant makes gestures or hand movements, which, to an experienced officer, suggest furtive and illegal motives. (See, e.g., *Souza, supra*, 9 Cal.4th at pp. 241–242.) Based on the totality of circumstances, Detective Landreth was justified in conducting an investigative detention: he had specific and articulable facts that would cause a reasonable officer to suspect that Littleton could be involved in criminal activity. The detective's testimony showed: Littleton was standing with several other individuals on the property of a residence owned and operated by a criminal street gang and at which a violent felon with an outstanding arrest warrant was believed to reside; the entire group immediately dispersed as the officers converged; and Littleton made a furtive movement to dispose of the long object he held as soon as he saw the officers approach. "The possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct. Indeed, the principal function of his [or her] investigation is to resolve that very ambiguity and establish whether the activity is in fact legal or illegal . . . ." (*Tony C., supra*, 21 Cal.3d at p. 894.)

The trial court was correct in finding the existence of reasonable suspicion to justify the detention and in denying Littleton's motion to suppress. As a result of this conclusion, we need not and do not address respondent's supplemental arguments as to why the motion to suppress was properly denied.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED.

JOHNSON, J.

We concur:

CHANEY, Acting P. J.

BENDIX, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.