[Nos. F002496, F002498. Fifth Dist. Apr. 16, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
BRODERICK W. NELSON, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

1210

---

---

COUNSEL

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, and Christine Zilius, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Eddie T. Keller and Raymond L. Brosterhous II, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**THE COURT.**[*]—On April 4, 1983, defendant Broderick W. Nelson withdrew his plea of not guilty and pled guilty to a violation of section 496, subdivision 1 of the Penal Code,[2] receiving stolen property as charged in count II of the information. The remaining count against the defendant alleging the unlawful entry into a motor vehicle with the intent to commit larceny in violation of section 459 was thereupon dismissed. Appellant was sentenced to the aggravated term of three years in state prison to run concurrently with the term imposed in Fresno County Superior Court Case No. 262682-8. Appellant was given 15 days credit for time served and good conduct credits. Defendant appeals, challenging the denial of his motion to suppress evidence pursuant to section 1538.5 and the revocation of probation.

The 1538.5 motion heard in the superior court was submitted on the preliminary hearing transcript. The following is a summary of the evidence presented at the preliminary hearing.

On October 27, 1982, at approximately 4 a.m., Kenneth Braxton was informed by a sheriff's deputy that someone had broken into his 1980 Toyota pickup truck. Braxton left his apartment and observed that the left wing window of his vehicle was broken and that two stereo speakers, stereo cassette unit, one cassette tape and vehicle battery were missing. A neighbor, Patrick Hook, had observed a dark blue or dark green late model Chevrolet parked and blocking access to a carport. He had heard a clicking noise described as "metal on metal" and saw a person peering around the corner of the carport. He called the police. Approximately 30 minutes later, deputies transported Hook to a nearby location where he identified a vehicle which had been stopped by law enforcement.

Sheriff's Deputy Robinson had heard Hook's report and had seen a similar vehicle, without its headlights turned on, exit a different apartment complex. The headlights were turned on when the vehicle pulled in front of the patrol car. Because the vehicle matched the description provided by Patrick Hook,

---

[*]Before Brown (G. A.), P. J., Franson, J., and Martin, J.

[2]All statutory references are to the Penal Code unless otherwise indicated.

the deputy stopped the Chevrolet and discovered that defendant was the driver and a person by the name of Robert Yates was a passenger.

Deputy Moore, who responded to the call placed by Patrick Hook, proceeded to the area of the vehicle stop. Moore testified that the driver, defendant Nelson, identified himself and the deputy questioned the defendant regarding his destination and the purpose of his being in the area. No *Miranda*[3] warnings were given. Deputy Moore testified the defendant was not under arrest at that time but only detained. Deputy Moore had transported Hook to the scene who then identified the vehicle as the same one he had observed at his apartment complex. During the questioning of the defendant, Deputy Moore observed tools on the floorboard of the passenger side of the vehicle, including a screwdriver, wrenches and a type of tool used for cutting wire. At that point, defendant was arrested. Defendant informed Deputy Moore he could look into the car. When Deputy Moon asked defendant if he could look in his trunk, defendant responded that he had lost the keys to the trunk.

Officer Moon testified that defendant's mother later consented to the search of the vehicle. At that time, a hearsay objection was lodged. The magistrate admitted the testimony subject to a motion to strike. Another hearsay objection was sustained to Officer Moon's testimony that the defendant said his mother was the owner of the vehicle. The car was impounded and searched without a search warrant. Items found in the trunk included two speakers, one vehicle battery, a stereo cassette and a cassette carrying case.

Ultimately, the magistrate reversed himself and denied defendant's motion to suppress pursuant to Proposition 8 on the June 1982 California primary election ballot.[4] Evidence of the property seized and the testimony concerning consent was admitted.

Defendant renewed his motion to set aside the information and to suppress evidence pursuant to sections 995 and 1538.5 in the superior court. On March 18, 1983, said motions were denied.

I.

MOTION TO SUPPRESS EVIDENCE

At the hearing on the motion to suppress evidence pursuant to section 1538.5, the defense argued that the prosecution had failed to establish that

---

[3]*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

[4]Proposition 8 added section 28, subdivision (d), to article I of the California Constitution.

the warrantless search of the vehicle driven by defendant was justified by consent or otherwise. The trial court ruled that defendant lacks standing to object to the search because his mother owned the car. Defendant contends on appeal that the trial court erroneously denied the defense motion to suppress evidence based on an unsupported finding that defendant lacked standing to raise the issue.

This question has now been decided by the California Supreme Court. ▮ In the recent case of *In re Lance W.* (1985) 37 Cal.3d 873 [210 Cal.Rptr. 631, 694 P.2d 744], the California Supreme Court held Proposition 8 has abrogated both the "vicarious exclusionary rule" under which a defendant has standing to object to the introduction of evidence seized in violation of the rights of a third person, and a defendant's right to object to and suppress evidence seized in violation of the California, but not the federal, Constitution. (*Id.*, at p. 879.)

▮ "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." (*Alderman* v. *United States* (1969) 394 U.S. 165, 174 [22 L.Ed.2d 176, 187, 89 S.Ct. 961].) "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." (*Rakas* v. *Illinois* (1978) 439 U.S. 128, 134 [58 L.Ed.2d 387, 395, 99 S.Ct. 421].) Since the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment, it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections. (*Ibid.*) The question is whether the challenged search and seizure violated the Fourth Amendment rights of a criminal defendant who seeks to exclude the evidence obtained during it. That inquiry in turn requires a determination of whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect. (*Id.*, at p. 140 [58 L.Ed.2d at p. 399].)

In *Rakas*, the petitioners were passengers occupying a car which they neither owned nor leased. (*Ibid.*) In asserting that a violation of their Fourth Amendment rights had occurred, petitioners relied upon *Jones* v. *United States* (1960) 362 U.S. 257 [4 L.Ed.2d 697, 80 S.Ct. 725, 78 A.L.R.2d 233]. In *Jones*, a friend had given Jones permission to use an apartment and a key to it, with which Jones had admitted himself on the day of the search. He had slept there "maybe a night" but his home was elsewhere. The Supreme Court held under these circumstances, that while one wrongfully on the premises could not move to suppress evidence obtained as the result of searching them, "anyone legitimately on premises where a search occurs may challenge its legality." (*Id.*, at p. 267 [4 L.Ed.2d at p. 706].)

The Supreme Court distinguished the facts of *Rakas* from those appearing in *Jones,* on the basis that the passengers asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized. The fact that they were "legitimately on [the] premises" in the sense that they were in the car with the permission of its owner was not determinative of whether they had a legitimate expectation of privacy in the particular areas of the automobile searched. (*Rakas* v. *Illinois, supra,* 439 U.S. 128, 148 [58 L.Ed.2d 387, 404].) The court declined to decide whether the same expectations of privacy are warranted in a car as would be justified in a dwelling place in analogous circumstances. (*Ibid.*) "We have on numerous occasions pointed out that cars are not to be treated identically with houses or apartments for Fourth Amendment purposes. [Citations.] But here petitioners' claim is one which would fail even in an analogous situation in a dwelling place, since they made no showing that they had any legitimate expectation of privacy in the glove compartment or area under the seat of the car in which they were merely passengers. Like the trunk of an automobile, these are areas in which a passenger *qua* passenger simply would not normally have a legitimate expectation of privacy." (*Id.,* at pp. 148-149 [58 L.Ed.2d at p. 404].)

The deputy testified there was no reason to believe the defendant was not in lawful possession of the vehicle. Thus, in this case, we are faced with the driver of an automobile who, with the exception of his mother, had complete dominion and control over the vehicle and could exclude others from it. Thus, there is a question of whether defendant could legitimately expect privacy in the area of the vehicle over which he had dominion and control. (*Id.,* at p. 149 [58 L.Ed.2d at pp. 404-405]; *United States* v. *Portillo* (9th Cir. 1980) 633 F.2d 1313, 1317.) However, the evidence is uncontroverted that defendant gave one of the deputies permission to look into the *car,* but informed the deputy that he lost the keys to the *trunk.* Informing the officer that he does not have the keys to the trunk is not the same as denying permission to search.

 No *Miranda* warning was necessary to obtain a consent to search for consent to search is not a Fifth Amendment waiver. (*People* v. *James* (1977) 19 Cal.3d 99, 115 [137 Cal.Rptr. 447, 561 P.2d 1135].) Furthermore, there was evidence that the owner of the vehicle, i.e., defendant's mother, gave law enforcement officers permission to open and search the trunk of the vehicle. Defendant's argument that the evidence of the mother's consent was inadmissible hearsay is without merit. "There is a well-established exception or departure from the hearsay rule applying to cases in which the very fact in controversy is whether certain things were said or done and not as to whether these things were true or false, and in these cases the words or acts are admissible not as hearsay but as original

evidence." (*People* v. *Henry* (1948) 86 Cal.App.2d 785, 789 [195 P.2d 478]; *People* v. *Rosson* (1962) 202 Cal.App.2d 480, 486, 487 [20 Cal.Rptr. 833].)

". . . oral words of consent . . . are not hearsay because they are not offered to prove the truth of any matter asserted in the oral . . . statements. The words of consent are relevant as words of authorization. They are, therefore, nonhearsay and they become relevant to the issue of consent to search merely from the fact that the words are spoken. [One's] internal state of mind is not relevant on the issue of consent. It is the saying of the words of consent that is the issue involved, just as the saying of the words of a contract is nonhearsay and becomes the relevant issue involved to determine whether there is a contract." (Jefferson, Cal. Evidence Benchbook (2d ed. 1982) § 1.1, p. 10; contra *People* v. *Donnell* (1975) 52 Cal.App.3d 762 [125 Cal.Rptr. 310].)

■ Although consent cannot be implied from defendant's mere failure to object to a search (*People* v. *Superior Court* (*Arketa*) (1970) 10 Cal.App.3d 122, 127 [89 Cal.Rptr. 316]), his conduct as to his consent to search of the trunk was equivocal and the evidence of the owner's consent is sufficient to validate the search.

II.*

PROBATION REVOCATION

. . . . . . . . . . . . . . . . . . . . . .

Affirmed.

---

*See footnote on page 1209, *ante*.