Filed 8/25/25  P. v. Ruiz CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D084504 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. FWV23001287) |
| ALVARO RUIZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Bernardino County, Michael A. Camber, Judge.  Conditionally reversed and remanded with directions.

Tracy R. LeSage, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Heather B. Arambarri, Deputy Attorneys General, for Plaintiff and Respondent.

Alvaro Ruiz pled no contest to possession of a firearm by a felon. (Pen. Code,[1] § 29800, subd. (a)(1).)  Ruiz appeals the judgment, arguing the court erred by denying his pre-plea motion to suppress evidence.  As we will explain, resolution of this claim turns on a factual issue not expressly addressed by the trial court below, and thus, we conditionally reverse and remand for a new hearing on Ruiz's suppression motion.

Ruiz also contends the trial court made certain errors in imposing fines and fees.  The People agree the trial court erred by staying, rather than striking, the conviction assessment and court operations fees, but contend the court properly executed the restitution fine.  We find merit to Ruiz's arguments regarding both the fines and fees.  We provide direction to the trial court for addressing the fines and fees on remand.

FACTUAL AND PROCEDURAL BACKGROUND

A.  *Arrest and Charges*

On a sunny afternoon, Ontario Police Officer Kyle Hanlin and two partners came upon Ruiz sitting in a U-Haul truck in a motel parking lot. The truck was backed into a parking spot, which prevented Officer Hanlin from seeing the license plate.  Officer Hanlin knew U-Haul trucks were often stolen and knew the motel to be in an area where people often possessed firearms, narcotics, and other contraband.  As the officers passed Ruiz, he and his passenger immediately exited the truck.  The officers parked and approached Ruiz.  Ruiz was wearing a tank top and loose shorts.  His demeanor was calm and cooperative.

Officer Hanlin asked Ruiz about the truck.  Ruiz stated another individual rented the truck, and Ruiz might be late returning it.  Officer Hanlin then conducted a patdown search of Ruiz, during which he found two

---

[1]  Further statutory references are to the Penal Code.

2

live rounds of ammunition and one spent shell casing in his pocket. Officer Hanlin placed Ruiz in handcuffs and directed him to sit on the curb near the truck.

Officer Hanlin asked Ruiz for consent to search the truck. Ruiz agreed. Officers searched the front passenger compartment of the truck and did not find anything illegal. The officers discovered that the back of the truck was secured with a bike lock, but Ruiz did not provide the key. Officer Hanlin found the key in Ruiz's pocket. Officers found an AR-15 rifle and ammunition in the back of the truck.

Ruiz was arrested and subsequently charged with one count of possession of a firearm by a felon and one count of possession of ammunition by a felon.

B. *Motion to Suppress*

Ruiz filed a motion to suppress evidence under section 1538.5, seeking suppression of all evidence resulting from his encounter with police and the related searches of his person and the U-Haul truck.

At the hearing on the motion, Ruiz argued the entire contact with police constituted an unlawful detention, rather than a consensual encounter. He also asserted that the searches of his person and the back of the truck were unlawful, both because they were conducted without warrants or Ruiz's consent and because the scope of the patdown search was excessive. The prosecution argued the contact between police and Ruiz was both consensual and based on reasonable suspicion of criminal activity; Ruiz consented to the searches of his person and the truck; and the scope of the patdown search was proper.

The trial court denied the motion, finding the initial contact between police and Ruiz was consensual; the patdown search was supported by

3

reasonable suspicion he was involved in criminal activity; and the scope of the patdown was lawful.  The court also found Ruiz consented to the search of the truck.

C.  *Plea and Sentence*

After the trial court denied Ruiz's motion to suppress, he pled no contest to the charge of possession of a firearm by a felon.  The prosecution dismissed the remaining count.  The trial court sentenced Ruiz to state prison for 16 months.  The court also imposed a $300 restitution fine, and imposed, but stayed, a $30 conviction assessment fee and a $40 court operations fees.  Ruiz timely appealed.

DISCUSSION

A.  *Motion to Suppress*

1.  *Standard of Review*

The Fourth Amendment to the United States Constitution protects individuals against unreasonable searches and seizures and is applicable to states by virtue of the due process clause of the Fourteenth Amendment.  (U.S. Const., 4th & 14th Amends.; *People v. Camacho* (2000) 23 Cal.4th 824, 829.)  When reviewing the denial of a motion to suppress based on an alleged Fourth Amendment violation, we indulge all inferences in favor of the trial court's ruling and will uphold the court's express and implied factual findings if they are supported by substantial evidence.  (*People v. Redd* (2010) 48 Cal.4th 691, 719; *People v. Woods* (1999) 21 Cal.4th 668, 673.)  But "we exercise our independent judgment in determining the legality of a search on the facts so found."  (*Woods,* at pp. 673–674.)

4

2. *Consensual Encounter*

Ruiz first contends the initial police contact was not consensual. The California Supreme Court has recognized "three broad categories" of police encounters in the context of the Fourth Amendment: "consensual encounters that result in no restraint of liberty whatsoever; detentions, which are seizures of an individual that are strictly limited in duration, scope, and purpose; and formal arrests or comparable restraints on an individual's liberty." (*In re Manuel G.* (1997) 16 Cal.4th 805, 821 (*Manuel G.*).) "Consensual encounters do not trigger Fourth Amendment scrutiny," and thus, "require no articulable suspicion that the person has committed or is about to commit a crime." (*Ibid.*; see also *Fla. v. Bostick* (1991) 501 U.S. 429, 434; *People v. Rivera* (2007) 41 Cal.4th 304, 309 ["It is well established that law enforcement officers may approach someone on the street or in another public place and converse if the person is willing to do so."].) A detention, on the other hand, while less intrusive than a formal arrest, does require some objective manifestation of reasonable suspicion. (See *People v. Souza* (1994) 9 Cal.4th 224, 230 ["the temporary detention of a person for the purpose of investigating possible criminal activity may, because it is less intrusive than an arrest, be based on 'some objective manifestation' that criminal activity is afoot and that the person to be stopped is engaged in that activity"].)

There is no bright-line rule to determine if an encounter is consensual. (*Ohio v. Robinette* (1996) 519 U.S. 33, 39.) Rather, "a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." (*Bostick, supra*, 501 U.S. at p. 439.) Whether or not a person would have believed that he or she was free to leave is to be evaluated in

5

light of the totality of the circumstances, rather than emphasizing particular details of that conduct in isolation. (*Mich. v. Chesternut* (1988) 486 U.S. 567, 573.) Factors that might indicate an unlawful detention has taken place include (1) the presence of several police officers; (2) an officer's display of a weapon; (3) some physical touching of the person; or (4) the use of language or a tone of voice indicating that compliance with the officer's request might be compelled. (*United States v. Mendenhall* (1980) 446 U.S. 544, 554; *Manuel G., supra*, 16 Cal.4th at p. 821.) "The officer's uncommunicated state of mind and the individual citizen's subjective belief are irrelevant in assessing whether a seizure triggering Fourth Amendment scrutiny has occurred." (*Ibid*.)

Thirty-nine seconds elapsed between the time the officers parked near the U-Haul truck and when Officer Hanlin began the patdown search of Ruiz. During this brief period, the officers engaged Ruiz in a consensual encounter. When the officers first approached Ruiz, they did not make any significant show of authority or otherwise give Ruiz the impression he was not free to leave. To the contrary, Officer Hanlin testified, and the bodyworn camera footage shows, they parked approximately 20 to 25 feet away from the truck, in a manner that did not block it from moving. Although there were multiple officers, only Officer Hanlin spoke with Ruiz, and he did not say anything compelling Ruiz's compliance. None of the officers physically touched Ruiz at this time. In addition, although the officers were in uniform and wore their duty belts with guns, none of them drew their weapons, showed any sign of force, or used language demanding Ruiz's compliance.

We therefore conclude the brief initial encounter between the police and Ruiz was consensual. (See, e.g., *Manuel G., supra*, 16 Cal.4th at p. 821.)

6

3. *Patdown Search*

Next, Ruiz challenges the lawfulness of the patdown search.

      a. *The Patdown Search was Not Supported by Reasonable Suspicion*

Ruiz contends the patdown search was not supported by reasonable suspicion.  We agree.

In *Terry v. Ohio* (1968) 392 U.S. 1 (*Terry*), the Supreme Court held that when a police officer harbors reasonable suspicion that "criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous," an investigatory detention and patdown search for weapons is constitutionally permissible under the Fourth Amendment.  (*Id.*, at p. 30.)  The purpose of such a patdown search "is not to discover evidence of crime, but to allow the officer to pursue his [or her] investigation without fear of violence." (*Minnesota v. Dickerson* (1993) 508 U.S. 366, 373.)  Accordingly, a patdown "must be strictly 'limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby.' " (*Ibid.*)

Reasonable suspicion is less than probable cause (*United States v. Arvizu* (2002) 534 U.S. 266, 274), but is more than a mere "hunch," and must be based on "specific reasonable inferences which [officers are] entitled to draw from the facts in light of [their] experience[s]." (*Terry, supra*, 392 U.S. at p. 27.)  Whether reasonable suspicion exists depends on the totality of the circumstances, and a court must ask "whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his [or her] safety or that of others was in danger." (*Ibid.*)  "Considerations relevant to this inquiry typically include visible bulges or baggy clothing that suggest a hidden weapon; sudden movements or attempts to reach for an object that is not immediately visible; evasive and deceptive responses to an officer's

7

questions about what the individual was doing; and unnatural hand postures that suggest an effort to conceal a weapon." [Citation.] Other relevant circumstances can include the type of crime at issue; the detained individual's suspected involvement in such a crime; and the searching officer's experience with such crimes and their associated weapon use in the particular location of the detention." (*In re Jeremiah S.* (2019) 41 Cal.App.5th 299, 305 (*Jeremiah S.*).)

By the time Officer Hanlin conducted the patdown search of Ruiz, he knew it was common for people to possess firearms in the area and U-Haul trucks were often stolen. Also, he was unable to view the truck's license plate and saw Ruiz and his passenger exit the truck "immediately" after the officers passed them. Finally, Ruiz told Officer Hanlin he did not rent the truck, and he was not going to return it by the deadline. These facts might have supported Officer Hanlin's suspicion that the truck was stolen, that Ruiz was engaged in other unlawful activity, and/or that Ruiz was attempting to evade the officers' attention or distance himself from possession of the truck, which are important circumstances to consider in the totality. However, they do not alone support an inference that Ruiz was carrying a weapon as to provide reasonable suspicion for the patdown search. Crucially, there are no facts in the record supporting a finding that Ruiz might have possessed tools related to an auto theft that he could have used as a weapon against Officer Hanlin; Officer Hanlin did not testify to having seen any suspicious bulges in Ruiz's clothing; and there was nothing about Ruiz's demeanor or movements suggesting he was in possession of any weapons.

"Where, as here, the record is lacking in specific and articulable facts indicating that a particular suspect may be armed and dangerous, a patsearch for weapons is an impermissible intrusion." (*Jeremiah S., supra,*

41 Cal.App.5th at p. 307 [finding patdown search was not supported by reasonable suspicion where subject was suspected of committing a robbery and the officer knew robbers tended to carry weapons, but no evidence robbery involved a weapon and suspect's appearance and demeanor were not indicative of being armed].)

### b. *Consent*

Our finding that Officer Hanlin did not possess reasonable suspicion to justify the patdown search does not end our inquiry, as the patdown must be deemed lawful if it was conducted pursuant to Ruiz's voluntary consent.

"[A] search conducted pursuant to a valid consent is constitutionally permissible." (*Schneckloth v. Bustamonte* (1973) 412 U.S. 218, 222; (*People v. Cantor* (2007) 149 Cal.App.4th 961, 965 (*Cantor*) ["Consent to a search is a recognized exception to the Fourth Amendment's warrant requirement."].) "Where . . . the prosecution relies on consent to justify a warrantless search or seizure, it bears the 'burden of proving that the defendant's manifestation of consent was the product of his free will and not a mere submission to an express or implied assertion of authority.' " (*People v. Zamudio* (2008) 43 Cal.4th 327, 342. Whether consent is voluntary is a question of fact to be determined in the light of all the circumstances. (*People v. Llamas* (1991) 235 Cal.App.3d 441, 447.) We apply the substantial evidence standard of review to the court's finding of voluntariness. (*Ibid.*)

The record here shows Officer Hanlin asked Ruiz if he had any weapons on him, and Ruiz responded by raising his arms, turning his back to Officer Hanlin, and taking one step in the direction of the officer. At the hearing on Ruiz's suppression motion, Officer Hanlin testified he perceived Ruiz's actions as consent to a patdown search for weapons.

9

In denying Ruiz's suppression motion, the trial court found the contact between officers and Ruiz remained consensual "until we are past the ammunition being located." The court, however, did not make an express finding that Ruiz voluntarily consented to the patdown search. Specifically, with respect to the lawfulness of the patdown search, the court denied the motion to suppress based on a finding that the search was supported by reasonable suspicion. Had the trial court directly addressed the issue of voluntary consent, it might have found Ruiz consented of his own free will when he raised his arms and turned his back toward the officer. (*People v. Lopez* (2020) 46 Cal.App.5th 317, 327 [consent to search may be nonverbal and implied by conduct].) On the other hand, the court might have found the facts supported the conclusion that Ruiz involuntarily submitted to the officers' authority when he was confronted by multiple officers and pointedly questioned about his activities and potential possession of contraband. (*People v. James* (1977) 19 Cal.3d 99, 110–112 [discussing factors that may support a finding that consent was result of involuntary submission to authority].)

Because there remains an outstanding factual question about whether Ruiz voluntarily consented to the patdown search, we cannot decide whether the search was lawful despite the lack of reasonable suspicion. Accordingly, remand is warranted to allow the trial court to make this determination in the first instance. (*In re Edgerrin J.* (2020) 57 Cal.App.5th 752, 769 [remand required where additional factual determinations must be made by trial court in first instance before ruling on motion to suppress].) Nevertheless, as we will discuss, if Officer Hanlin conducted the patdown search pursuant to Ruiz's voluntary consent, the scope of the patdown search and the search of

10

the U-Haul also were lawful.  Thus, we conditionally reverse the judgment and remand with instructions, as discussed in greater detail *post*.

### c. *The Patdown Search Did Not Exceed the Permissible Scope*

Ruiz also contends the patdown search exceeded any permissible scope. A patdown is limited to a search "reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." (*Terry, supra*, 392 U.S. at p. 29.)  Generally, an officer cannot search a suspect's pockets or otherwise intrude on the suspect's privacy beyond a patdown of his outer clothing unless the officer feels an object that could be a weapon.  (See *People v. Dickey* (1994) 21 Cal.App.4th 952, 957.)  "If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed." (*Minn. v. Dickerson* (1993) 508 U.S. 366, 373, citing *Sibron v. New York* (1968) 392 U.S. 40, 65–66 [officer's reach into defendant's pocket to retrieve narcotics exceeded scope of search for weapons and violated Fourth Amendment].)  The "plain touch" exception, however, allows for an officer to seize an object "whose contour or mass makes its identity" as contraband "immediately apparent." (*Dickerson,* at pp. 375–376; see *People v. Dibb* (1995) 37 Cal.App.4th 832, 835–836; *Dickey,* at p. 957.)

Here, Officer Hanlin testified he slid an open palm on the outside of Ruiz's pocket and, in doing so, felt what he recognized to be ammunition.  The bodyworn camera footage generally corroborates Officer Hanlin's testimony, as it shows a partial view of Officer Hanlin running a flat palm across the front of Ruiz's pocket before manipulating the contents of the pocket.  Officer Hanlin then removed a plastic baggie containing ammunition and other items from Ruiz's pocket.  As did the trial court, we have some question about how Officer Hanlin was able to distinguish the ammunition from other items

11

in the baggie as he testified he had done. Nonetheless, the trial court reasonably found there was no evidence to contradict Officer Hanlin's testimony about feeling ammunition in Ruiz's pocket. We defer to the trial court's credibility finding. (*People v. Arebalos-Cabrera* (2018) 27 Cal.App.5th 179, 189.)

Having conducted the patdown of Ruiz with the suspicion he was engaged in criminal activity in an area where people often possess firearms, Officer Hanlin could have reasonably believed the ammunition he discovered was evidence of that suspected criminal activity. The officer then lawfully manipulated Ruiz's pocket to confirm his discovery. (*In re Lennies H.* (2005) 126 Cal.App.4th 1232, 1237 [under "plain-feel" exception to the warrant requirement, officers could lawfully seize keys in suspect's pocket during patdown where the keys' "incriminating character was immediately apparent" because they could link suspect to carjacking]; *People v. Bradford* (1997) 15 Cal.4th 1229, 1294 [applying corollary "plain-view" exception and explaining "the determination that the incriminating nature of an item was 'immediately apparent' [is] based upon whether the officers had probable cause to believe that the item was either evidence of a crime or contraband."].)

4. *Vehicle Search*

Ruiz next argues his consent to search the truck was involuntary, and the scope of the search exceeded any consent given.

a. *If Ruiz Consented to the Patdown Search, His Consent to the Vehicle Search was Voluntary*

Ruiz neither denies that he gave Officer Hanlin consent to search the truck nor argues he ever rescinded his consent. Rather, he contends his consent was involuntary because it was given while he was unlawfully detained.

12

Consent is involuntary when it is obtained during an unlawful detention. (*People v. Henderson* (1990) 220 Cal.App.3d 1632, 1651.) If Ruiz did not consent to the patdown search, and thus, his continued detention became unlawful, he could not have voluntarily consented to the vehicle search.

However, if Ruiz was detained based on a lawful patdown search and seizure of contraband as a result of that search, his consent to search the U-Haul was not inherently involuntary. The mere fact that a suspect is lawfully detained does not render his consent to search involuntary. (See *People v. Byers* (2016) 6 Cal.App.5th 856, 864.) Here, nothing about the circumstances of Ruiz's detention rose to the level of coercion. Although multiple officers approached Ruiz, by the time Ruiz gave his consent to search the truck, only Officer Hanlin had directly engaged with him. Then, Officer Hanlin conducted a brief patdown search of Ruiz, handcuffed him, and directed him to sit on the curb. None of the officers displayed their weapons or engaged in any aggressive conduct. Thus, substantial evidence supported the trial court's finding that Ruiz's consent was voluntary. (See *Llamas, supra*, 235 Cal.App.3d at p. 447 [consent was not coerced where suspect was illegally detained, handcuffed, and placed in back of patrol car, and the arresting officer had control of the suspect's car and other units were on scene].)

Accordingly, we find that, if Ruiz voluntarily consented to the patdown search, and thus, was lawfully detained at the time he consented to the vehicle search, the search of the truck was lawful.

b. *The Search of the U-Haul Did Not Exceed the Scope of Consent*

Ruiz further argues that, to the extent he consented to a search of the truck, his consent was limited to a search of the front passenger

13

compartment, not the locked back compartment to which he did not provide the key to police.

"A consensual search may not legally exceed the scope of the consent supporting it." (*People v. Crenshaw* (1992) 9 Cal.App.4th 1403, 1408.) The scope of a suspect's consent is determined by an objective reasonableness standard, which asks, "[W]hat would the typical reasonable person have understood by the exchange between the officer and the suspect?" (*Florida v. Jimeno* (1991) 500 U.S. 248, 251; accord, *People v. Tully* (2012) 54 Cal.4th 952, 983–984.) " 'Whether the search remained within the boundaries of the consent is a question of fact to be determined from the totality of circumstances. [Citation.] Unless clearly erroneous, we uphold the trial court's determination.' " (*Cantor, supra*, 149 Cal.App.4th at p. 965.)

Ruiz relies on *Cantor* to support his argument. However, *Cantor* is inapposite. There, the suspect consented to a "real quick check" of his car. (*Cantor, supra*, 149 Cal.App.4th at p. 964.) The officer proceeded to conduct a prolonged search of the car, including the trunk and under the hood. The officer then returned to the trunk and found a sealed wooden box. He used a screwdriver to open the box and found cocaine inside. (*Ibid.*) In finding the search exceeded the scope of the suspect's consent, the court did not focus on the officer's search of "a compartment of the vehicle itself." (*Id.* at p. 967.) Rather, the court found the suspect's consent did not extend to searching a locked or sealed container found inside of a vehicle. (*Id.* at pp. 966–967.)

Unlike in *Cantor*, the search here involved a compartment of the U-Haul truck, not a locked or sealed container carried in, but separate from, the truck itself. Where, as here, a suspect gives unqualified consent to search a car, it is deemed consent to search the car in its entirety. (See *People v. Williams* (1980) 114 Cal.App.3d 67, 74 ["Authorization to search an

14

automobile must be deemed to include the automobile in its entirety, unless the defendant expressly states otherwise."]; see also *People v. Nelson* (1985) 166 Cal.App.3d 1209, 1214 ["[T]he evidence is uncontroverted that defendant gave one of the deputies permission to look into the *car*, but informed the deputy that he lost the keys to the *trunk*. Informing the officer that he does not have the keys to the trunk is not the same as denying permission to search.].)

To the extent Ruiz voluntarily consented to the search of the U-Haul, the search did not exceed the scope of his consent.

### c. *If Ruiz Voluntarily Consented to the Patdown Search, the Search of the U-Haul was Lawful Under the Automobile Exception*

Even if Ruiz did not consent to the search of the back of the U-Haul, but he voluntarily consented to the patdown search that resulted in the recovery of ammunition from his pocket, the search of the entire U-Haul truck was lawful.

In ruling on Ruiz's suppression motion, the trial court expressly found the vehicle exception to the Fourth Amendment's warrant requirement did not apply. Nevertheless, on appeal, "we review the trial court's ruling, 'not the court's reasoning and, if the ruling was correct on any ground, we affirm.' " (*People v. Camacho* (2022) 14 Cal.5th 77, 123.) As discussed *post*, we find the search of the back of the U-Haul here was lawful under the vehicle exception.

Under the automobile exception, if police have probable cause to believe that a lawfully stopped vehicle contains evidence of criminal activity or contraband, they " ' "may conduct a warrantless search of any area of the vehicle in which the evidence might be found." ' " (*People v. Sims* (2021) 59 Cal.App.5th 943, 950; see *United States v. Ross* (1982) 456 U.S. 798, 800

15

[when police have probable cause, they "may conduct a probing search of compartments and containers within the vehicle whose contents are not in plain view"].)  Probable cause "is a more demanding standard than mere reasonable suspicion.' [Citation.]  It exists 'where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found . . . .' [Citation.]  In determining whether a reasonable officer would have probable cause to search, we consider the totality of the circumstances." (*People v. Lee* (2019) 40 Cal.App.5th 853, 862.)  If probable cause exists, officers " 'may conduct a probing search of compartments and containers within the vehicle whose contents are not in plain view.' " (*People v. McGee* (2020) 53 Cal.App.5th 796, 801.)

Here, the officers lawfully stopped the U-Haul for purposes of the vehicle exception, as they were investigating whether the U-Haul was stolen.  (See *Sims, supra*, 59 Cal.App.5th at pp. 947–948, 951 [finding vehicle exception applicable where police approached suspect sitting in his vehicle in a parking lot to investigate crime of public intoxication].)  In addition, if Officer Hanlin conducted the patdown search pursuant to Ruiz's voluntary consent, before the officers began their search of the U-Haul, the officer had knowledge Ruiz possessed ammunition and had admitted he was recently discharged from parole.  As a former parolee, Ruiz necessarily had previously served a prison sentence for a felony conviction, and thus, was prohibited from possessing guns and ammunition.  (§ 3000, subd. (a)(1) ["A sentence resulting in imprisonment in the state prison . . . shall include a period of parole supervision or postrelease community supervision, unless waived . . . ."]; § 29800, subd. (a)(1) ["Any person who has been convicted of a felony . . . and who . . . has in possession . . . any firearm is guilty of a

16

felony."]; § 30305, subd. (a)(1) ["No person prohibited from owning or possessing a firearm . . . shall . . . possess . . . any ammunition . . . ."].) This evidence provided probable cause to search the entire U-Haul under the vehicle exception to the warrant requirement. (See *Ross, supra*, 456 U.S. at pp. 800–801, 817 [corroborated information from informant about drug sales combined with officer's observation of bullet on front seat of suspect's vehicle provided probable cause to search under vehicle exception].)

B. *Fines and Fees*

At sentencing, the trial court imposed a $300 restitution fine. The court also imposed a $30 conviction assessment fee and a $40 court operations fees. Upon a finding that Ruiz is indigent, the court stayed the $70 in fees. When Ruiz requested that the fines and fees be waived based on his inability to pay, the court stated it could not "do anything about the victim restitution fine."

Ruiz argues the trial court erred by failing to recognize it had discretion to stay the $300 restitution fine and by staying, rather than striking, the conviction assessment and court operations fees. The People argue the court properly imposed the $300 restitution fine but concede the fees should be stricken. We agree with Ruiz, and provide directions for the trial court on remand with respect to the fines and fees.

1. *Restitution Fine*

First, Ruiz challenges the execution of the restitution fine, relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). In *Dueñas*, the court reversed an order imposing and executing a restitution fine after concluding it violated the defendant's due process rights under the federal and California Constitutions to execute such a fine without determining the defendant's ability to pay. (*Id.* at pp. 1169–1172.) The court in *Dueñas* concluded, "the

17

[trial] court must stay the execution of the fine until and unless the People demonstrate that the defendant has the ability to pay the fine." (*Id.* at p. 1172.) Although our Supreme Court has granted review to decide this issue, *Dueñas* remains good law. (*People v. Kopp* (2019) 38 Cal.App.5th 47, review granted Nov. 13, 2019, S257844.)

Here, the trial court did not fail to conduct a hearing regarding Ruiz's ability to pay the restitution fine, as contemplated by *Dueñas*. Rather, the trial court found Ruiz indigent. Nevertheless, the court imposed and executed the restitution fine upon a finding it could not "do anything" but execute the fine. Under the reasoning of *Dueñas*, however, because the court found Ruiz was unable to pay the restitution fine, the fine should have been stayed. (*Dueñas, supra*, 30 Cal.App.5th at p. 1172.)

2. *Conviction Assessment and Court Operations Fees*

The parties agree that the trial court should have stricken, rather than stayed, the $30 conviction assessment and $40 court operations fees after finding Ruiz was indigent. We accept the People's concession that the fees should have been stricken. (See *People v. Son* (2020) 49 Cal.App.5th 565, 592 ["If the trial court determines [the defendant] is *unable* to pay the court assessments, they must be stricken."]; *People v. Castellano* (2019) 33 Cal.App.5th 485, 490 ["If the trial court determines a defendant is unable to pay, the fees and assessments cannot be imposed . . . ."].)

DISPOSITION

The judgment is conditionally reversed, and the matter is remanded to the trial court with directions to vacate its order denying the motion to suppress and conduct a renewed suppression hearing, consistent with this opinion, to resolve the issue of whether Ruiz voluntarily consented to the patdown search. If the court finds Ruiz voluntarily consented to the patdown

search, and on this basis again denies the motion to suppress, it shall reinstate the judgment. (*Edgerrin J., supra*, 57 Cal.App.5th at p. 770.) So reinstated, the judgment shall be modified to stay the $300 restitution fine and strike the $30 conviction assessment fee and $40 court operations fee. The trial court then is directed to prepare an amended abstract of judgment and forward it to the Department of Corrections and Rehabilitation.

If the trial court finds Ruiz did not voluntarily consent to the search, and on this basis grants Ruiz's motion to suppress, it shall afford him an opportunity to withdraw his guilty plea. (*Edgerrin J., supra*, 57 Cal.App.5th at p. 770.) Should the matter thereafter proceed to a new judgment, the trial court must reconsider application of any contemplated fines and fees consistent with this decision.


KELETY, J.

WE CONCUR:


O'ROURKE, Acting P. J.


BUCHANAN, J.


19